## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **JOSHUA MAUSSER,** | Case No. 3:19 CV 2055 |
| Plaintiff, | Judge James G. Carr |
| v. | Magistrate Judge James R. Knepp II |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | **REPORT AND RECOMMENDATION** |

### INTRODUCTION

Plaintiff Joshua Mausser ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated July 23, 2020). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI in November 2016, alleging a disability onset date of January 1, 2001. (Tr. 174-81). His claims were denied initially and upon reconsideration. (Tr. 65-100). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before an administrative law judge ("ALJ") on April 19, 2018. (Tr. 34-64). On August 8, 2018, the ALJ found Plaintiff not disabled in a written decision. (Tr. 15-28). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner.

(Tr. 1-6); *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on September 6, 2019. (Doc. 1).

## FACTUAL BACKGROUND[1]

Personal Background and Testimony

Born in 1986, Plaintiff was 14 years old on his alleged onset date, and 31 years old at the time of the ALJ hearing. *See* Tr. 174. He had past work doing landscaping, janitorial work, and unloading boxes. (Tr. 46-49, 225). He alleged disability due to Crohn's disease and arthritis and stated he stopped working due to these conditions. (Tr. 224).

Plaintiff was five feet four inches tall and weighed approximately 120 pounds at the time of the hearing. (Tr. 43). He had weighed slightly less ("117 pounds and then a little lower") before physicians prescribed steroids; he had been on the steroids for about a month. *Id.*

Plaintiff described his Crohn's disease causing throbbing in his abdominal area, and he was "in the bathroom a good amount of the time". (Tr. 50).; *see also* Tr. 54 ("[W]hen it's really bad, I'm in the bathroom, it seems like, for hours."). In an average day, Plaintiff had to use the restroom "[m]aybe six" times, but sometimes he was in the bathroom hourly. (Tr. 54). On a bad day, Plaintiff's pain lasted "[a]bout half the day." (Tr. 51).

He took Humira, and it helped; his physicians wanted to increase his dosage from once every two weeks to once per week because it was "not working well enough." *Id.* He had no side effects. (Tr. 55). Plaintiff had a colonoscopy a few weeks prior to the hearing. (Tr. 56).

---

1. Plaintiff's arguments all stem from the ALJ's evaluation of Plaintiff's Crohn's disease. *See* Doc. 12. As such, the undersigned summarizes only the testimony and facts related to this impairment.

Relevant Medical Evidence

Plaintiff reported he was diagnosed with Crohn's disease at approximately age sixteen and had a section of his bowel removed. *See* Tr. 236, 326.

In December 2016, Plaintiff underwent an internal medicine examination with Harold Nims, D.O. (Tr. 326-30). Plaintiff told Dr. Nims he was on his mother's health insurance until age 26 and "for a period of times it appears he was treated symptomatically for his Crohn's disease." (Tr. 326). Plaintiff was off medication for the prior two years "due to lack of health insurance." *Id.* He reported four to six loose stools per day, no stool incontinence, and a stable weight (128 pounds at the examination). (Tr. 326-27). Plaintiff reported chronic moderate abdominal pain, "which at times becomes severe". (Tr. 326). Dr. Nims found Plaintiff had normal bowel sounds; his abdomen was not tender to palpation, and he had no rebound tenderness, guarding, rigidity, or CVA tenderness. (Tr. 328). Dr. Nims' impression was Crohn's disease ("currently untreated"), history of partial bowel resection, and chronic moderate abdominal pain. (Tr. 329).

In January 2017, Plaintiff saw Sara Webb, CNP, at Neighborhood Health Association. (Tr. 343-45). He reported a history of Crohn's which "started getting worse a couple years ago." (Tr. 343). He took Humira previously "before insurance was lost." *Id.* He had diarrhea and vomiting, but no abdominal pain or nausea. *Id.* Plaintiff weighed 127 pounds, and on examination, his abdomen was soft and non-distended with mild periumbilical tenderness; he had normal bowel sounds. (Tr. 344). Ms. Webb referred Plaintiff to a gastroenterologist. *Id.*

Plaintiff returned to Ms. Webb the following month, reporting he was "a little improved"; he still had diarrhea, but denied blood in his stool. (Tr. 411). In her review of systems notes, Ms. Webb noted Plaintiff had diarrhea, nausea, and vomiting, but no abdominal pain. *Id.* On

examination, Plaintiff weighed 125 pounds and his abdominal examination was the same. (Tr. 411-12). She instructed Plaintiff to follow up in two months or as needed. (Tr. 412).

Later that month, Plaintiff saw Roberta Lay, CNP, at the University of Toledo Medical Center's gastroenterology department. (Tr. 366-68). Plaintiff reported he was doing well until three years prior when he "began to have more difficulty with diarrhea, and [abdominal] pain"; he had six bowel movements per day and his weight was stable. (Tr. 267). Ms. Lay noted "no abdominal pain." *Id.* On examination, Plaintiff's abdomen was soft with no tenderness. (Tr. 368). Ms. Lay ordered lab work and ordered a colonoscopy and upper endoscopy. *Id.*

Plaintiff returned to Ms. Webb in April 2017; she noted Plaintiff had diarrhea, nausea and vomiting but no abdominal pain. (Tr. 407). On examination, Plaintiff weighed 127 pounds and his abdominal examination was the same as prior visits. (Tr. 407-08). Ms. Webb started Plaintiff on Vitamins D and B12 and folic acid due to deficiencies. (Tr. 408).

Plaintiff underwent a colonoscopy and esophagogastroduodenoscopy later that month with Thomas Sodeman, M.D. (Tr. 383-86). The colonoscopy revealed ileocecal valve/distal terminal ileal ulceration causing stenosis of the distal terminal ilium; friable mucosa in cecum at the periphery of the ileocecal valve area; and a normal examination of the ascending colon, transverse colon, descending colon, sigmoid colon, and rectum; he obtained biopsies. (Tr. 386). The upper endoscopy revealed a duodenal bulb ulcer located at the posterior wall with a clean base measuring 8 mm; he obtained biopsies to rule out active Crohn's disease or celiac disease. (Tr. 384). The cecal biopsy revealed focally active chronic colitis; the pathologist noted this and ulcerations were compatible with Plaintiff's reported history of Crohn's disease. (Tr. 379).

An MRI scan that same month showed two separate segments of active inflammatory bowel disease and dilation of the intervening segment of distal ilium indicating a degree of background fibrosis/partial obstruction. (Tr. 355).

Plaintiff returned to Ms. Lay for follow up in May. (Tr. 363-65). He reporting ongoing abdominal pain and his mother stated that "some days he can't get out of bed." (Tr. 364). Plaintiff reported six bowel movements per day, but denied nocturnal diarrhea; on examination, he weighed 125.6 pounds and his abdomen was soft and non-tender. (Tr. 364-65). Ms. Lay prescribed Humira, added a diagnosis of duodenal ulcer disease and prescribed pantoprazole. (Tr. 365).

Plaintiff returned to Ms. Webb in July, stating he "feels well with no complaints and is sleeping well". (Tr. 403). Ms. Webb continued to note nausea, diarrhea and vomiting, but no abdominal pain. (Tr. 404). Plaintiff weighed 121 pounds and was "very pale"; his abdominal examination was the same as before. *Id.*

In September, Plaintiff returned to Ms. Webb for medication refills. (Tr. 400). He reported diarrhea that was "about the same", nausea, and vomiting, but no abdominal pain. *Id.* Plaintiff weighed 124 pounds and his abdominal examination remained the same. (Tr. 400-01).

In a December visit to Ms. Webb, Plaintiff was "[h]aving lots of abdominal pain". (Tr. 397). His weight decreased from 124 pounds to 117 pounds; pain kept him from eating. *Id.* Ms. Webb noted Plaintiff had abdominal pain "right lateral at times[,] diffuse at other times", diarrhea, nausea, and vomiting. (Tr. 398). His abdomen was non-distended with normal bowel sounds; he "flinched with stethoscope placed lightly on abdomen" and Ms. Webb observed the "worst area for pain" was the left lower quadrant. *Id.* Ms. Webb assessed, *inter alia*, Crohn's disease "without complication", and instructed Plaintiff to follow up with gastroenterology. (Tr. 399).

Plaintiff saw gastroenterologist Dr. Sodeman in February 2018. (Tr. 372-75). He reported abdominal pain and cramping, six bowel movements daily. and a weight loss of six pounds in the prior seven months. (Tr. 374). Plaintiff weighed 116 pounds. (Tr. 372). On examination, Plaintiff had a soft-non-distended abdomen with normal bowel sounds, no tenderness, guarding, masses, rebound tenderness, or CVA tenderness. *Id.* Dr. Sodeman noted Plaintiff had no "significant clinical improvement" on Humira; he started Plaintiff on steroids. (Tr. 375).

At a March 2018 visit with Ms. Webb, Plaintiff reported abdominal pain, diarrhea, nausea, and vomiting. (Tr. 394). Ms. Webb noted identical abdominal examination findings to Plaintiff's December 2017 visit. *Compare* Tr. 395 *with* Tr. 398. Plaintiff weighed 119 pounds. (Tr. 394). Four days later, Plaintiff returned to Dr. Sodeman, reporting he felt better on steroids, had diarrhea "sometimes" but no abdominal pain; he had gained two pounds. (Tr. 371). On examination, Plaintiff had right lower quadrant tenderness, but normal bowel sounds, and a soft non-distended abdomen with no guarding, masses, or rebound tenderness. *Id.* Dr. Sodeman ordered re-check of Plaintiff's vitamin B12 levels, and noted he might need an increased dose of Humira; he ordered a repeat colonoscopy "to check mucosal healing after evaluating response to [H]umira." (Tr. 372).

In April 2018, Plaintiff underwent a second colonoscopy with Dr. Sodeman. (Tr. 413-14). Dr. Sodeman noted: "The patient has been [on] Humira since [July 2017]. His symptoms have improved relatively on Humira, but he is still having diarrhea about 6 bowel movements daily and intermittent infrequent abdominal cramps." The colonoscopy "revealed normal colon mucosa, with no evidence of ulceration, inflammations, or erosion", but there was a stricture at the ileocecal valve" and Dr. Sodeman was unable to continue the procedure. (Tr. 414). Dr. Sodeman took biopsies, recommended a repeat colonoscopy in two months, and noted he would consider increasing Plaintiff's Humira dosage. *Id.* The biopsies showed active inflammatory bowel disease

6

and chronic active colitis. (Tr. 415). Later that month, Plaintiff reported bloating, diarrhea, gas, and nausea, but no abdominal pain to Umecca Cowart, NP. (Tr. 419). He weighed 123 pounds and examination revealed a soft, non-tender abdomen, with normal bowel sounds. (Tr. 420).

*Opinion Evidence*

After his December 2016 examination, Dr. Nims opined Plaintiff's "ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects is not impaired due to the objective findings described above." (Tr. 330).

Later in December 2016, State agency physician William Bolz, M.D., reviewed Plaintiff's records (Dr. Nims' examination) and concluded that Plaintiff "does not currently have a severe physical impairment that would limit his ability to work at this time." (Tr. 69).

In February 2017, State agency physician Gail Mutchler, M.D., reviewed Plaintiff's records. (Tr. 86). She had Dr. Nims' examination records and Nurse Webb's examination notes from January (which, she noted indicated a physical examination "WNL" or within normal limits). *See id.* Dr. Mutchler reached the same conclusion as Dr. Bolz – that Plaintiff "does not currently have a severe physical impairment that would limit his ability to work at this time." *Id.*

In April 2018, Ms. Webb completed a "work restriction report." (Tr. 388). Therein, she indicated Plaintiff could sit, stand, or walk for one to two hours each in an eight-hour work day (zero to one hours at one time); he could not lift or carry any amount. *Id.* She opined Plaintiff would need to change positions often and at will, would need use the restroom for ten minutes every hour, and would miss three or more days of work per month due to exacerbations. *Id.* She further indicated Plaintiff's pain was both "moderate" and "marked". *Id.*

7

Four days later Dr. Sodeman completed the same form. (Tr. 390). He wrote "N/A" for sitting, standing, walking, lifting, and carrying instructions. *Id.* He indicated Plaintiff's impairment did not require him to change positions often and at will. *Id.* He indicated Plaintiff would need to leave his work station at least once every hour for ten minutes to use the bathroom, and would likely miss three or more days of work per month due to exacerbations. *Id.* Next to a question about pain, Dr. Sodeman again wrote "N/A". *Id.*

VE Testimony

A VE appeared and testified at the administrative hearing. (Tr. 58-62). The ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, work experience, and residual functional capacity ("RFC") as ultimately determined by the ALJ. *See* Tr. 59. The VE responded that such an individual could not perform Plaintiff's past work, but could perform other jobs such as dishwasher, assembly jobs, or sorting jobs. (Tr. 60). The VE further opined that the tolerance for being off-task is "at most 10 percent, or what equates to 6 minutes per hour, average" and the tolerance for absenteeism is one day per month. (Tr. 61).

ALJ Decision

In her August 2018 decision, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through June 30, 2019, and had not engaged in substantial gainful activity since his alleged onset date (January 1, 2001). (Tr. 17). He found Plaintiff had a severe impairment of borderline intellectual functioning and that Plaintiff's Crohn's disease was non-severe. (Tr. 18-20). He concluded Plaintiff's impairments – singly or in combination – did not meet or medically equal the severity of a listed impairment. (Tr. 20). The ALJ thus concluded Plaintiff had the RFC:

> to perform a full range of light work at all exertional levels but with the following nonexertional limitations: he is limited to performing simple, routine, and repetitive

tasks but not at a production rate pace so, for example, no assembly line or conveyer belt work. He is able to make simple, work-related decisions. He is limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently and be adequately and easily explained.

(Tr. 23). The ALJ determined Plaintiff was unable to perform his past relevant work (Tr. 26), but considering his age, education, work experience, and RFC, there were other jobs existing in significant numbers in the national economy he could perform (Tr. 27). Therefore, the ALJ found Plaintiff not disabled. (Tr. 28).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff directs his arguments at the ALJ's failure to find his Crohn's disease to be a severe impairment. Thus, he contends the ALJ erred at Step Two, and by not including Crohn's related

limitations in the RFC. He contends the ALJ erred in her consideration of the opinion evidence and Plaintiff's subjective symptoms in reaching this conclusion. For the reasons discussed below, the undersigned finds no error and recommends the Court affirm.

Step Two

At Step Two, an ALJ must determine a claimant's "severe" impairments. A severe impairment is one which significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c), 416.920(c). An impairment is only considered non-severe if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at Step Two and proceeds through the remaining steps of the analysis, any failure to identify some other impairment as severe constitutes harmless error so long as the ALJ considered the entire medical record in rendering her decision. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) ("[S]o long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments . . . does not constitute reversible error[.]"); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (holding that as long as ALJ considers all impairments, failure to deem a single impairment non-severe is "legally irrelevant").

In this case, the ALJ provided a detailed analysis of why she found Plaintiff's Crohn's disease to be a non-severe impairment. *See* Tr. 18-19. Plaintiff contends that the ALJ did not properly consider his Crohn's disease beyond Step Two, but rather "noted no less than 7 times that she found the condition to be nonsevere, at times as justification for not attributing any limitations to this condition." (Doc. 17, at 5). At first glance, the ALJ's justification appears circular – that is,

11

the ALJ found the impairment non-severe, and the non-severity of the impairment also provides justification for not including any limitations in the RFC. However, the undersigned finds that the ALJ's decision makes clear she considered the entire medical record in rendering her decision, *Maziarz*, 830 F.2d at 244, and "consider[ed] all [of Plaintiff's] impairments", *Kirkland*, 528 F. App'x at 427, therefore the failure to find Plaintiff's Crohn's disease severe at Step Two is harmless. The ALJ's repeated references to Plaintiff's Crohn's disease as non-severe in the RFC analysis can be reasonably read to refer back to – and incorporate – the ALJ's detailed analysis of the evidence of that impairment at Step Two.

Opinion Evidence

Plaintiff contends that the ALJ failed to properly evaluate the medical opinion evidence from his treating sources – Dr. Sodeman and Ms. Webb. For the reasons discussed below, the undersigned concludes the ALJ did not err.

*Dr. Sodeman*

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188.[2] A treating physician's opinion is entitled to "controlling weight" if it is supported by (1) medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with other substantial evidence in the case record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The requirement to give controlling weight to a treating source is presumptive; if the ALJ decides not to do so, she must provide evidentiary

---

2. Although recent revisions to the CFR have changed the rules regarding evaluation of treating physician opinions, such changes apply to claims filed after March 27, 2017, and do not apply to claims filed prior to that date. *See* Social Sec. Admin., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5852-53, 2017 WL 168819. Plaintiff filed his claim in 2016 and thus the previous regulations apply.

support for such a finding. *Id.* at 546; *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376-77 (6th Cir. 2013). If an opinion is not granted controlling weight, the ALJ must give "good reasons" for the weight assigned thereto. *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)).

"Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *4). When determining weight and articulating good reasons, the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.* An ALJ is not, however, required to enter into an "exhaustive factor-by-factor analysis" to satisfy the requirement. *See Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

The ALJ summarized Dr. Sodeman's opinion and then explained the weight assigned:

> The undersigned gives partial weight to this opinion. A treating physician's medical opinion on the issue of the nature and severity of an impairment is generally given more weight; and when supported by objective medical evidence and consistent with other substantial evidence of record, entitled to controlling weight. (20 CFR 404.1527(c)(2); 20 CFR 416.927(c)(2)). In this case, however, there is contradictory evidence in the record that prevents granting controlling weight to Dr. Sodeman's opinion. His opinion is not consistent with the medical records in the file. As discussed above, the claimant's Crohn's disease is not a severe impairment. In March 2018, Dr. Sodeman saw the claimant and his physical examination noted subjective reports of tenderness, however his abdomen was non-distended, with no rebound tenderness or guarding, and normal bowel sounds. (Ex. 5F pg. 3). Additionally, the claimant saw him in February 2018, and his examination noted no abdominal tenderness, normal bowel sounds, and no guarding. (Ex. 5F pg. 6). These office notes are not consistent with Dr. Sodeman's opinion that the claimant would be absent three or more days per month and that he would require hourly breaks to use the restroom. Furthermore, statements that a claimant is "disabled" or "unable to work," "cannot perform a past job," "meets a Listing" or the like are not medical opinions but are administrative findings

dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate her statutory responsibility to determine the ultimate issue of disability. (20 CFR 404.1527(d)(l),(2), 20 CFR 416.927(d)(l),(2)).

(Tr. 25).

The ALJ's analysis speaks primarily to the regulatory factor of consistency. *See* 20 C.F.R. § 404.1527(c)(3), 416.927(c)(3) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). The ALJ accurately noted that Dr. Sodeman's own examination findings were largely mild, citing Plaintiff's February and March 2018 visits. (Tr. 25); *see also* Tr. 374 (February 2018 examination findings of normal bowel sounds, and a soft, non-distended abdomen with no tenderness, guarding, masses, rebound tenderness or CVA tenderness); Tr. 371 (March 2018 examination findings of right lower quadrant tenderness, but normal bowel sounds, and a soft non-distended abdomen with no guarding, masses, or rebound tenderness.). This is a good reason to discount a treating physician's opinion. *See Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes."). The ALJ specifically noted that Dr. Sodeman's treatment notes did not support his opinion regarding hourly ten minute restroom breaks or three days of absenteeism per month. (Tr. 25). Second, the ALJ referred to her earlier Step Two analysis. *See* Tr. 25 ("As discussed above, the claimant's Crohn's disease is not a severe impairment."). Plaintiff is correct that the ALJ's wording is inartful. That is, the fact that an impairment is not severe is not necessarily a "good reason" in and of itself to discount opinion evidence. However, a non-severe impairment, by definition, "does not significantly limit your . . . ability to do basic work activities.". 20 C.F.R. §§ 404.1522(a), 416.922(a). As described above, the undersigned finds the ALJ's statement is reasonably read to incorporate her prior analysis explaining why she found

14

Crohn's disease non-severe. Further, in that earlier analysis, the ALJ noted Plaintiff's own testimony "that he would use the restroom approximately six times in a twenty-four hour period", and that Dr. Sodeman "stated that the claimant's Crohn's disease had improved since he was placed on medication". (Tr. 19) (citing Tr. 413 (Dr. Sodeman's April 2018 note that "The patient has been [on] Humira since [July 2017]. His symptoms have improved relatively on Humira, but he is still having diarrhea about 6 bowel movements daily and intermittent infrequent abdominal cramps.")). The ALJ reasonably considered some improvement in symptoms, in combination with mild examination findings, as a reason to discount Dr. Sodeman's highly restrictive opinion.

The undersigned concludes the ALJ provided the required "good reasons", that is, reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *4.[3] As such, the ALJ did not err in her consideration of Dr. Sodeman's opinion.

---

3. The undersigned further notes the analysis of another district court on the issue of absenteeism:

> On the whole, it is clear that the ALJ properly rejected the treating physician's opinions as not well supported and as inconsistent with other substantial evidence of record. The ALJ analyzed minute portions of the treating physicians' RFC opinions in unusual depth, and should not be penalized for failing to discuss her reasons for rejecting one discrete portion that offered a wholly speculative and unsupported and vague "estimate" that Plaintiff would be absent from work more than 3-4 days per month. Based upon the record as a whole, including the lack of evidence to support such a high rate of absenteeism, the undersigned concludes that the ALJ's failure to discuss that portion of the opinions of the treating physicians was, at most, harmless error.

*Wagers v. Comm'r of Soc. Sec.*, 2016 WL 4211811, at *7 (S.D. Ohio), *report and recommendation adopted*, 2016 WL 4194504; *see also Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 20160 (noting that check box opinions without any accompanying explanation are "weak evidence at best" that "meets our patently deficient standard"); *Denham v. Comm'r of Soc. Sec.*, 2016 WL 4500713, at *3 (S.D. Ohio) ("The magistrate judge also correctly found that any error in the ALJ's consideration of Lewis's evaluation was harmless because the check-box form was so patently deficient that the Commissioner could not possibly credit it.").

15

*Ms. Webb*

Plaintiff also argues the ALJ erred in her consideration of Ms. Webb's opinion. For much the same reasons discussed in relation to Dr. Sodeman's opinion, the undersigned disagrees.

Under the regulations, a nurse practitioner is an "other source". Evidence from those who are "not acceptable medical sources" or "other sources" is "important and should be evaluated with key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06-3p, 2006 WL 2329939, at *2. The ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6.

Interpreting SSR 06-3p, the Sixth Circuit explained that "[o]pinions from non-medical sources who have seen the [Plaintiff] in their professional capacity should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion in with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). A nurse practitioner is such an "other source". *Id.*

The ALJ summarized Ms. Webb's opinion and then explained the weight assigned:

> The undersigned gives little weight to this opinion. Ms. Webb is a certified nurse practitioner, and therefore not an acceptable medical source. Opinions from sources who are not "acceptable medical sources" are considered using the same factors that apply to acceptable medical sources, such as supportability and consistency. (20 CFR 404.1527(f), 416.927(f)). Ms. Webb's statements are not consistent with the medical record. Treatment records generally noted no abdominal tenderness. (Ex. 4F pg. 13; Ex. 5F pg. 6).

(Tr. 25). Once again, the ALJ explained she discounted Ms. Webb's opinion because it was inconsistent with treatment notes. The records cited by the ALJ support this analysis. *See* Tr. 365 (Ms. Lay's May 2017 examination finding Plaintiff's abdomen soft and non-tender); Tr. 374 (Dr.

Sodeman's February 2018 examination finding Plaintiff's abdomen soft and non-distended, with normal bowel sounds, no tenderness, guarding, masses, rebound tenderness, or CVA tenderness). This finding is further supported by substantial other evidence of record. *See* Tr. 344, 401, 408, 404, 412 (Ms. Webb's examination findings of soft and non-distended abdomen with mild periumbilical tenderness and normal bowel sounds in January, February, April, July, and September 2017); *cf.* Tr. 395, 398 (Ms. Webb's December 2017 and March 2018 notes that Plaintiff "flinched with stethoscope placed lightly on abdomen" and the "worst area for pain" was the left lower quadrant); Tr. 371 (Dr. Sodeman's March 2018 finding of right lower quadrant tenderness). As with Dr. Sodeman, the ALJ reasonably found these examination findings did not support Ms. Webb's opinion that Plaintiff would need to, *inter alia*, change positions at will, leave his workstation for ten minutes every hour to use the restroom, miss three or more day of work per month, or be off-task twenty percent or more of the day. (Tr. 25). The ALJ's analysis satisfies SSR 06-3p's requirement to "generally . . . explain the weight given" to such an opinion "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning". 2006 WL 2329939, at *6.

*Non-Treating Physicians*

Finally, Plaintiff contends it was error for the ALJ to assign greater weight to the non-treating physician opinions (consultative examiner Dr. Nims and State agency reviewers Drs. Bolz and Mutchler) because these physicians did not have the entire medical record. Again, the ALJ did not err.

The Sixth Circuit has held that the regulations "do[ ] not instruct an ALJ to compare the consistency of treating and examining physicians' opinions to each other", instead, an ALJ is instructed "to compare the consistency of a physician's opinion to the *record as a whole*." *Coldiron*

*v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 441-42 (6th Cir. 2010) (emphasis in original). In other words, an ALJ is not instructed to weigh the opinions against each other and automatically assign treating sources greater weight than examining or non-examining, and so forth. The ALJ is instead tasked with examining the opinions *individually* and in relation to the record as a whole. As discussed above, the ALJ's analysis of the treating physicians is supported by substantial evidence. Thus, the ALJ's decision to assign greater weight to the non-examining source is not *per se* error. Furthermore, it is not error for an ALJ to rely on the opinion of a physician who does not have the entire medical record, so long as the ALJ herself considers those later records. *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009). This is so because the responsibility for formulating the RFC rests with the ALJ, not a particular physician. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155-56 (6th Cir. 2009).

The ALJ followed the regulations – she evaluated each opinion individually. *See* Tr. 25-26. And she considered the medical evidence that post-dated these opinions related to Plaintiff's Crohn's disease in great detail. *See* Tr. 18-19. Although Plaintiff is correct that Dr. Nims and the State agency physicians did not have the later-obtained objective evidence confirming Plaintiff's Crohn's disease, "the mere diagnosis of [a condition], of course, says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *see also McKenzie v. Comm'r of Soc. Sec.*, 2000 WL 687680, at *5 (6th Cir.) ("[T]he mere diagnosis of an impairment does not render an individual disabled nor . . . reveal anything about the limitations, if any, it imposes upon an individual"). The ALJ in this case reasonably concluded that the later-acquired evidence did not alter the conclusion that Plaintiff's Crohn's disease did not impose restrictions on his ability to work.

<u>Subjective Symptom Reports</u>

18

Next, Plaintiff contends the ALJ erred in her evaluation of Plaintiff's subjectively-reported symptoms related to his Crohn's disease. For the reasons discussed below, the undersigned again finds no error.

The Sixth Circuit has recognized that pain alone may be disabling. *See King v. Heckler*, 742 F.2d 968, 972 (6th Cir. 1984). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009).

When a claimant alleges impairment-related symptoms, an ALJ follows a two-step process to evaluate those symptoms. 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304, *2-8.[4] First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms. SSR 16-3p, 2017 WL 5180304, *3-4. Second, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which those symptoms limit the claimant's ability to perform work-related activities. *Id.* at *3, 5-8. To evaluate a claimant's subjective symptoms, an ALJ considers the claimant's complaints along with the objective medical evidence, information from medical and non-medical sources, treatment received, and other evidence. *Id.* at *5-8. In addition to this evidence, the ALJ must consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *Id.* at *7-8. Those factors include: daily activities; location, duration, frequency,

---

4. SSR 16-3p replaced SSR 96-7p. *See* 2017 WL 5180304, at *1, 13. The new ruling "eliminated "'the use of the word 'credibility' . . . to 'clarify that the subjective symptoms evaluation is not an examination of an individual's character.' " *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (quoting SSR 16-3p). Both SSR 96-7p and SSR 16-3p direct the ALJ to evaluate an individual's subjective report of symptoms with the factors listed in 20 C.F.R. § 404.1529. SSR 16-3p, 2017 WL 5180304, at *7; SSR 96-7p, 1996 WL 374186, at *2.

and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of any medication; treatment, other than medication for relief of pain or other symptoms; measures other than treatment a claimant uses to relieve pain or other symptoms; and any other factors pertaining to a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c). Although the ALJ must "consider" the listed factors, she need not discuss every factor. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

The Sixth Circuit has explained (interpreting SSR 96-7p, the precursor ruling), a credibility determination will not be disturbed "absent compelling reason", *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and such determinations are "virtually unchallengeable", *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal quotation omitted). The Court is thus limited to determining whether the ALJ's reasons are supported by substantial evidence. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]"). Nevertheless, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10.

In the RFC analysis, the ALJ set forth the two-step analysis for considering subjective symptoms, summarized Plaintiff's testimony, and concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. As for the claimant's statements about the

intensity, persistence, and limiting effects of his symptoms, they are inconsistent because they are not supported by the medical evidence. At the hearing, the claimant testified that he was unable to work due to his Crohn's disease and bilateral wrist arthritis. As discussed above, these conditions are not severe impairments.

(Tr. 24-25). Earlier, at Step Two, the ALJ explained her consideration of Plaintiff's subjective

Crohn's disease related complaints:

> While the claimant had subjective reports of abdominal pain and frequent diarrhea, the objective evidence in the file is not consistent with his allegations. At the hearing, the claimant testified that he would use the restroom approximately six times in a twenty-four hour period, and that he had abdominal pain at times. The record does not contain evidence of emergency room visits secondary to Crohn's disease, and the claimant's physical examinations generally noted normal bowel sounds, no distention, and no more than mild abdominal tenderness. (Ex. 3F pg.10; Ex. 4F pgs. 13, 16; Ex. 5F pg.6; Ex. 8F pgs. 11, 14, 18; Ex. 10F, pg. 4). Additionally, Dr. Sodeman stated that the claimant's Crohn's disease had improved since he was placed on medication. (Ex. 9F pg. 1). Medical source statements Sara Webb, CNP, and Dr. Sodeman, discussed more fully below, are inconsistent with their office notes. (Ex. 6F; Ex. 7F). They opined that the claimant would have at least three absences per month, as a result of his Crohn's disease, however, these opinions are not supported by their treatment notes, which generally noted no more than mild tenderness and normal bowel sounds. (Ex. 3F pg.10; Ex. 4F pgs. 13, 16; Ex. 5F pg.6; Ex. 8F pgs. 11, 14, 18; Ex. 10F, pg. 4).

(Tr. 19).

Taking these two evaluations together, the undersigned finds the ALJ properly explained her consideration of Plaintiff's symptoms. First, the ALJ noted mild objective findings were inconsistent with Plaintiff's allegation of disability based on Crohn's disease. *See* Tr. 19. As discussed above in relation to the opinion evidence, this finding is supported by substantial evidence. *See* Tr. 328 (Dr. Nims December 2016 examining finding normal bowel sounds, no abdominal tenderness, and no rebound tenderness, guarding, rigidity, or CVA tenderness; Tr. 344, 401, 408, 404, 412 (Ms. Webb's examination findings of soft and non-distended abdomen with mild periumbilical tenderness and normal bowel sounds in January, February, April, July, and September 2017); Tr. 366 (Ms. Lay's February 2017 examination finding Plaintiff's abdomen soft

with no tenderness); Tr. 365 (Ms. Lay's May 2017 examination finding Plaintiff's abdomen soft and non-tender); Tr. 374 (Dr. Sodeman's February 2018 examination finding Plaintiff's abdomen soft and non-distended, with normal bowel sounds, no tenderness, guarding, masses, rebound tenderness, or CVA tenderness); Tr. 420 (Ms. Cowart's April 2018 examination finding soft, non-tender, non-distended abdomen with normal bowel sounds); *cf.* Tr. 395, 398 (Ms. Webb's December 2017 and March 2018 notes that Plaintiff "flinched with stethoscope placed lightly on abdomen" and the "worst area for pain" was the left lower quadrant); Tr. 371 (Dr. Sodeman's March 2018 finding of right lower quadrant tenderness). Inconsistencies between subjective complaints and other evidence of record is a valid reason to discount subjective symptom complaints. *See Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

Second, the ALJ noted Dr. Sodeman observed improvement on medication. (Tr. 19) (citing Tr. 413). In April 2018, Dr. Sodeman noted: "The patient has been [on] Humira since [July 2017]. His symptoms improved relatively on Humira, but he is still having diarrhea about 6 bowel movements daily and intermittent infrequent abdominal cramps." (Tr. 413). Improvement on medication is a valid reason to discount subjective complaints. See 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (ALJ must consider effectiveness of medication); SSR 16-3p, 2017 WL 5180304, at *7; *Rice v. Astrue*, 2012 WL 95433, at *4 (S.D. Ohio) ("treatment records reflecting improvement over time" is a "legitimate factor[ ] for the ALJ to consider" in assessing credibility). And the ALJ's finding is supported by additional evidence of record. *Compare* Tr. 397 (December 2017 report of "lots of abdominal pain" to Ms. Webb) *with* Tr. 371

22

(Dr. Sodeman's March 2018 note that Plaintiff was "feeling better" on steroids, with no abdominal pain) *and* Tr. 419-20 (Plaintiff's April 2018 report to Ms. Cowart of no abdominal pain).

Taken together, Plaintiff's mild objective findings and improvement with medication are substantially supported reasons for the ALJ's discounting Plaintiff's subjective symptom reports.[5] Such inconsistencies in the record are a valid reason to discount a claimant's subjective statement of symptoms.

<u>Step Five</u>

Finally, Plaintiff contends the ALJ erred at Step Five in failing to include any limitations in the hypothetical question to the VE (and subsequently in the RFC), related to Crohn's disease.

To meet the burden at Step Five, the Commissioner must make a finding "'supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Id.* If an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the

---

5. The undersigned expressly declines to adopt the Commissioner's argument that Plaintiff's statements were less credible due to the fact that "[r]egular treatment did not begin until 2017". (Doc. 15, at 22). Although the Commissioner is correct that a failure to seek treatment may serve as a reason to discount the severity of symptoms, *see Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004), the relevant Ruling instructs that an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on [the] basis of [lack of treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 2017 WL 5180304, at *9. Here, the record reveals Plaintiff's lack of insurance prevented him from seeking treatment (*see* Tr. 326, 343), a reason expressly contemplated by the Ruling, *see* 2017 WL 5180304, at *10 ("When we consider the individual's treatment history, we may consider . . . [a]n individual may not be able to afford treatment[.]"). Furthermore, this appears to be a *post hoc* rationale offered by the Commissioner, rather than a rationale offered by the ALJ herself.

claimant's limitations. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010). However, an ALJ is only required to include in the RFC those restrictions she finds credible and supported. *Irvin v. Social Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Because, as discussed above, the ALJ did not err in evaluating Plaintiff's Crohn's disease, she did not err in failing to include the requested limitations in her hypothetical question or RFC. As such, there is no error at Step Five. *See Salyer v. Comm'r of Soc. Sec.*, 574 F. App'x 595, 596 (6th Cir. 2005) ("Regarding the first contention, though the VE testified that Salyer's job prospects would diminish if certain hypothetical conditions applied, that testimony lacks relevance because in fact the ALJ found that none of those conditions applied.").

Although Plaintiff can certainly point to evidence supporting a contrary conclusion, this court must affirm "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. Again, substantial evidence is "more than a scintilla . . . but less than a preponderance" *Besaw*, 966 F.2d at 1030. The ALJ's decision in this case clears this "fairly low bar", *Hickney-Haynes v. Barnhart*, 116 F. App'x 718, 726 (6th Cir. 2004), for the reasons set forth above. This is not to say Plaintiff had no limitations or that some evidence does not support the opposite conclusion. However, the ALJ's decision that Plaintiff was not disabled is substantially supported and thus must be affirmed.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI and DIB supported by substantial evidence and recommends the decision be affirmed.

24

 s/ James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).